IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES | * | |
| v. | * | Crim. Case No.: SAG-15-0037 |
| KURTIS KELVIN McGILL | * | |
| Defendant | * | |

\* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Kurtis Kelvin McGill, who is presently in Bureau of Prisons ("BOP") custody at FCI Cumberland, filed a Motion for Compassionate Release ("the Motion") on August 5, 2020, ECF 34. Since his original filing, there has been an extensive exchange of information about this matter over several months. McGill has filed supplemental information, and has been appointed counsel, who has submitted briefing on his behalf. ECF 36, 40, 42, 46, 47, 55. The Government has opposed the motion, with exhibits. ECF 45. The Court has held several teleconferences with counsel and has requested production of McGill's updated medical records. This Court has considered all of that information and, for the reasons that follow, McGill's Motion is DENIED, without prejudice to renewal of his request under certain circumstances as described herein.

**I.  Factual and Procedural Background**

On July 10, 2015, McGill pled guilty to an indictment charging him with one count of bank robbery. ECF 22. Simultaneously, he admitted to having violated his conditions of supervised release for an earlier federal bank robbery conviction by committing the robbery charged in this case. At his sentencing on November 13, 2015, the Government recommended, and United States District Judge J. Frederick Motz imposed, a sentence of 132 months' imprisonment (eleven years). ECF 30, 32. That sentence represented a downward variance from the advisory guidelines range 2 of 151-188 months. ECF 33. A twenty-four month sentence for the violation

1

of supervised release was imposed, to run concurrently to the 132 months. *United States v. McGill*, Crim No. 04-0460, ECF 28.

McGill now seeks to have his sentence reduced, requesting immediate release to home confinement in light of the dangers posed by the COVID-19 pandemic.

**II.      Legal Standards**

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court follows a three step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

**III.     Analysis**

For nearly a full year, courts have been grappling with the appropriate standards for compassionate release to be applied during an unprecedented and unpredictable global pandemic. The effects of the novel coronavirus infection on a specific individual are impossible to predict: some elderly and frail persons recover without incident and experience few symptoms, while young and otherwise healthy individuals have succumbed to dire complications. Scientific knowledge about the COVID-19 virus is constantly evolving, as are preferred methods of prevention and treatment. Sadly, the virus itself also appears to be evolving and mutating, just as more widespread distribution of what appear to be highly effective vaccines has begun. In the context of compassionate release motions, judges, many of whom have no meaningful scientific or medical backgrounds, are essentially asked to predict the risk of severe complications to a particular inmate. Then, if the risk is sufficiently great, the judges must determine whether, nonetheless, other factors weigh in favor of continued detention, including whether the risk of danger presented to the community from the inmate's release would be too significant to permit.

Like everything else with this virus, just as a cohesive set of standards takes shape, new circumstances render those standards somewhat obsolete. Such is the context for this case—in the months since McGill first sought compassionate release, and even in the weeks since this Court has been actively engaging with counsel to assess the details of his potential release plans, McGill's circumstances have changed dramatically. Given the unique and changing circumstances surrounding this motion, a comprehensive summary of events leading to this decision is required.

    **a. McGill's Developing Post-Release Options and COVID Exposure**

This Court will begin by summarizing its initial assessment of the situation in December 2020, when the motion first became ripe for adjudication. The written materials presented to the Court evidenced that McGill suffered from several significant medical conditions, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, each of which independently constitutes a COVID-19 risk factor as outlined by the Center for Disease Control ("CDC"). However, the Court was also cognizant of McGill's unfortunate history of recidivist conduct. The instant conviction is McGill's third conviction, in this very Court, for bank robbery. In 1998, he was convicted of robbing four banks, and received a sentence of 84 months in prison. *United States v. McGill*, Crim. No. JFM98-0207. He was released to federal supervision in July, 2004, and began robbing banks again just weeks later, in August and September, 2004. Later in 2004, he pled guilty to robbing five additional banks, and received a sentence of 106 months in prison. *See United States v. McGill*, Crim. No. JFM-04-0460. The same pattern ensued: McGill was released to federal supervision in July, 2013, and robbed a bank, resulting in the instant conviction, just over one year later in August, 2014.

Thus, the Court recognized that McGill posed a real risk of recidivism and a real threat to community safety. Even strict conditions of federal supervision had not sufficed, on two prior occasions, to protect victim bank tellers from McGill's repeated offenses. However, the Court's concern over McGill's enhanced susceptibility to COVID-19 complications led it to ask the United States Probation Office, in early December, 2020, to investigate McGill's proposed release plan, so that the Court could evaluate the precise risks posed by his release along with the other relevant factors, including the danger to his health from continued incarceration.

The initial proposed release plan, which involved McGill residing alone on electronic monitoring at a home owned by an acquaintance, was deemed inadequate by the Court because 5 there would be no active, in-person supervision of his daily activities. After this Court expressed that

4

view to counsel, McGill proposed a family member who would be willing to reside with him at the home, and the Probation Office undertook to meet with the family member and vet the residence. After several weeks of trying to schedule meetings only to have the appointments rescheduled, the Probation Officer learned from the homeowner that the home had been rendered uninhabitable by a burglary, eliminating it as a possible residence for McGill.

On January 20, 2021, the Probation Officer advised the Court that McGill's counsel had proposed, and the Probation Officer had vetted, a transitional housing facility where he could reside. Because transitional housing facilities, like prisons, involve congregate living arrangements placing residents at higher risk of COVID-19 exposure, the Court asked for additional information about the living conditions and about the duration of time McGill would be permitted to live at a residence intended for "transition." The Probation Officer informed the Court that the residence typically restricts its residents to one-year terms.

Because that duration would not suffice to permit adequate post-incarceration supervision of McGill in this Court's assessment, the Court scheduled a teleconference with counsel on Monday, January 25, 2021. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇ During the teleconference, the Court asked counsel to provide (1) more information about the length of time the transitional housing would permit McGill to stay and (2) updated information about McGill's medical condition.

On January 28, 2021, a medical update revealed two pieces of good news: (1) ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇; and (2) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

5

██████████████████████████████████████████. McGill's counsel also confirmed that the transitional residence would allow McGill to stay for a second year. [1]

### b. Assessing Sentence Reduction

Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t) (2018).[2] In response, the Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" exist, as determined by the BOP. See U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)–(D) (U.S. SENTENCING COMM'N 2018) [hereinafter "U.S.S.G."].

As several courts in this District have recognized, "[t]he First Step Act is in tension with the [Sentencing] Commission's Policy Statement," because the "catch-all" provision of § 1B1.13 cmt. n.1(D) only allows the BOP to determine what "other reasons" constitute "extraordinary and compelling" ones for release whereas the First Step Act empowers courts to do independent of the BOP. *United States v. Gutman*, Crim. No. RDB-19-0069, 2020 WL 2467435, at *2 (D. Md. May 13, 2020); *see also, e.g.*, *Wise v. United States*, Crim. No. ELH-18-72, 2020 WL 2614816, at *4- 1 Even Judge Motz's original judgment required that McGill serve the first eighteen months of his release

---

[1] Even Judge Motz's original judgment required that McGill serve the first eighteen months of his release on home detention. ECF 32.
[2] The Government concedes that McGill has fulfilled the administrative prerequisites to seek compassionate release. ECF 44 at 1.

6

on home detention. ECF 32. The Government concedes that McGill has fulfilled the administrative prerequisites to seek compassionate release. ECF 44 at 1. 7 6 (D. Md. May 22, 2020) (describing how § 1B1.13 "is outdated in light of the [First Step Act]," and collecting cases holding similarly); *United States v. Decator*, 452 F. Supp. 3d 320, 323 (D. Md. 2020) ("The Policy Statement in § 1B1.13, however, is at least partially inconsistent with the First Step Act."), appeal docketed, No. 20-6877 (4th Cir. June 15, 2020). For the reasons elucidated by these courts, and others across the country, this Court concurs that it "may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)." *United States v. Redd*, 444 F. Supp. 3d 717, 726-27 (E.D. Va. 2020); *see also United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020); *United States v. Haynes*, No. 93 CR 1043, 2020 WL 1941478, at *14 E.D.N.Y. Apr. 22, 2020 (collecting cases); *Decator*, 452 F. Supp. 3d at 323; *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[D]ependence on the BOP to determine the existence of an extraordinary and compelling reason . . . is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act.").

Relevant to this case, the COVID-19 pandemic can, in certain circumstances, give rise to an "extraordinary and compelling reason[ ]" permitting the Court to consider further an inmate's release under the First Step Act. *See, e.g., Wise*, 2020 WL 2614816, at *6-8; *Gutman*, 2020 WL 2467435, at *2. In this Court's view, the case law demonstrates that, under certain circumstances, the heightened risk of exposure to COVID-19 in an incarcerative setting might convert a medical condition that might not otherwise be deemed "serious" into a "serious medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a

correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

The fact that COVID-19 is present in a correctional facility, however, is not alone sufficient to qualify an inmate for compassionate release. *See United States v. Williams*, Crim. No. PWG13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.) ("The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card."). Instead, an inmate must demonstrate that he (1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released. *See, e.g., Wise*, 2020 WL 2614816, at *6-7 (discussing the danger that COVID-19 poses, and collecting cases finding that "serious chronic medical conditions and old age qualify" as compelling reasons for compassionate release); *United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *4-5 (E.D. Mich. May 15, 2020) (finding that even if the defendant's petition was timely, release would be improper, even though he both was immunocompromised and had heart disease, because there were no COVID-19 cases at his prison), appeal filed, No. 20-1523 (6th Cir. June 8, 2020); *United States v. Harper*, Crim. No. 7:18-cr00025, 2020 WL 2046381, at *3 & n.3 (W.D. Va. Apr. 28, 2020) (release justified by the defendant's age, heart condition, COPD, emphysema, and asthma, coupled with the fact that the prison he was housed at had "the fourth largest number of infections among federal prisons in the country"); *Mel*, 2020 WL 2041674, at *3; *United States v. Shah*, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying release, in part, because there were no COVID-19 cases at the inmate's facility, and the prison was making efforts to protect inmates).

In recent weeks and months, the analysis under the first prong of this two-part inquiry has been heavily guided by the CDC's published risk factors for incurring a severe, life-threatening case

of COVID-19. The CDC first examines the risk presented to a given individual based on age. *See People Who Are at Increased Risk for Severe Illness: Older Adults*, CTRS. FOR DISEASE CONTROL & PREVENTION (last updated December 3, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. Generally, [o]lder adults are at greater risk of requiring hospitalization or dying if they are diagnosed with COVID-19. As you get older, your risk of being hospitalized for COVID-19 increases." *Id.* The age group at the highest risk, however, is those over the age of 65, as 8 out of 10 COVID-19 deaths reported in the United States are individuals in that group. *Id.* McGill is sixty years of age. The CDC's data therefore places him at a somewhat elevated risk of severe complications—at roughly four times higher risk of hospitalization than 18-29 year olds. *Id.* Next, the CDC discusses an individual's increased risk for severe illness from COVID-19 based on his underlying medical conditions. *See People at Increased Risk: People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (last updated February 1, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-withmedical-conditions.html. As noted above, there can be no question that McGill has several conditions placing him at an increased risk of severe illness—███████████████████ ████████████████████████████████████████████████████████████████████ ██████████ *Id.* Thus, as of December of this year, McGill would have been within the set of individuals presenting "extraordinary and compelling circumstances" warranting further consideration of whether compassionate release was appropriate. ███████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ No one could opine, with any degree of certainty, █████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ █████████████████████████████████████████ Based on the currently available

9

scientific knowledge, though, █████████████████████████████████████████████

████████████████████████████████ *See Benefits of Getting a COVID-19 Vaccine*, CTRS. FOR DISEASE CONTROL & PREVENTION (last updated Jan. 5, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccinebenefits.html. While the vaccines, and even prior infection, have not been proven to eliminate any risk of reinfection, it is believed that the antibodies conferred by the vaccines dramatically reduce a recipient's risk of severe complications from the disease.

The intersecting interests of justice and public health require a differentiation between prisoners who are truly high risk—by assessing a combination of age, health, and prison conditions—and those who face a lower amount of risk similar to most others, whether incarcerated or otherwise. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████—the Court is not persuaded that his incarcerative setting places him at greater risk of contracting, or suffering severe complications from, COVID-19 than he would have if residing in transitional housing.

Accordingly, at present, McGill has not established an extraordinary and compelling reason qualifying him for further consideration for compassionate release. This Court therefore need not reach what would be an exceptionally close question: whether a sentencing reduction is warranted after considering all of the factors in 18 U.S.C. § 3553(a), in light of the already below-guidelines sentence imposed by Judge Motz and McGill's history of recidivism while under federal supervision. Nevertheless, this Court fully anticipates that over the coming months, we will learn more about the duration of immunity conferred by the vaccine and the effectiveness of the vaccine to combat

variant forms of COVID-19 now circulating in the United States. To the extent any such emerging information would be likely to alter this Court's assessment of the current risk posed to McGill by the virus, he will be permitted to refile a motion seeking that the Court's assessment of his proffered extraordinary and compelling reasons be updated.

## ORDER

For the reasons stated in the Memorandum Opinion above, it is, this 4th day of February, 2021, hereby **ORDERED** that McGill's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF 34, is **DENIED** without prejudice. The parties are **DIRECTED** to confer and, on or before **5 p.m. on February 17, 2021**, submit to the Court proposed redactions to the Memorandum Opinion so that the Court may file a public, redacted version.

_____/s/_____
Stephanie A. Gallagher
United States District Judge